IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAREN G. ROUSE,

        Plaintiff,

vs.

        Case No. 04-1230-JTM

JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Karen Rouse has applied for disability insurance benefits. Her application was denied by the ALJ on February 17, 2004, a decision affirmed by the Appeals Council on May 24, 2004. There are two allegations of error by Rouse. First, that the ALJ failed to make a proper credibility determination under Tenth Circuit law and Social Security Ruling 96-7p. Second, that the ALJ erred in his determination that Rouse failed to meet the listed impairment of Listing 12.02.

Plaintiff-claimant Rouse has stated that she has been disabled since March 28, 2002, due to the limitations caused by a brain aneurysm. She was 42 years old at the time the alleged disability began. She has previously worked as a bartender, an insurance secretary, a customer service representative, a fast food cook, a school cook, and a teller.

Rouse collapsed during a 2002 visit to the emergency room, where she had gone due to a severe headache. Testing revealed the presence of a cerebral aneurysm. A craniotomy in which the aneurysm was clipped was performed. Later testing showed success in the operation, diminishing

residual vasospasms, and a diagnosis that Rouse would not require additional therapy. A test prior to her discharge on April 21, 2002 showed normal results. An examination in May of 2002 showed an absence of negative results, other than difficulty in ascending stairs, and a finding that Rouse did not exhibit any localized neurological deficits.

A follow-up exam the same month showed Rouse complained of mild headaches. The doctor recommended that Rouse remain on Dilantin and refrain from driving for six months. Examinations in the next few months showed a remission of the headaches, and concluded Rouse was doing very well.

Rouse reported concentration and memory problems in December 2002 and August 2003. The psychologist conducting the August examination found that Rouse had slight limitations of the ability to understand, remember, and carry out detailed instructions, interact appropriately with co-workers, and respond appropriately to changes in a routine work setting; she had a moderate limitation in the ability to respond appropriately to work pressures in a usual work setting.

At the hearing, Rouse testified that she could drive around her hometown and occasionally drive the twelve miles to Dodge City, Kansas, although sometimes she found herself too fatigued to drive. She has not worked since her aneurysm. She has not had any seizures since March 2002. She did small chores around the home, prepared meals, and took a daily nap of at least one hour. She testified she did not read and had difficulty concentrating through an entire movie.

The ALJ concluded that Rouse was severely impaired due to the effects of the surgery along with "associated seizure disorder, organic cognitive disorder and fatigue." (Tr. 15). However, the ALJ determined that Rouse did not meet any listed impairment:

2

> The claimant has organic mental disorders with borderline intellectual functioning. She complains of fatigue, reduced concentration and memory. However, her self-reported activities of daily living indicate independent self-care and housekeeping tasks. Although the claimant reported some problems with memory and concentration, she is able to cook. Although the claimant testified at the hearing that she cannot concentrate well enough to read, this is not reflected in the medical records. Overall, the evidence indicates mild restrictions in daily activities and social functioning with moderate difficulties in maintaining concentration, persistence or pace. She has had one or two episodes of decompensation. Based on the totality of the evidence, the undersigned finds that while the claimant's mental impairments are severe in nature, they do not meet the requirements of any listed impairment ... including medical listings 12.02. These impairments do not impose more than mild to moderate limitations in the claimant's mental functioning[.]

(Tr. 15). The detailed facts, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 14-15), cross-referenced in the brief of Rouse (Dkt. No. 5, at 3), and the Commissioner's response (Dkt. No. 6, at 1-6).

The court finds that Rouse has failed to demonstrate error in the ALJ's determination that she did not meet Listed Impairment 12.02. Here, the ALJ specifically identified the relevant medical listing, and reviewed the relevant evidence bearing on whether Rouse would meet the functional requirements set forth in Paragraph B of the listing. The ALJ noted the findings of the examining psychologist who reported that Rouse was able to follow and carry out simple instructions under ordinary supervision, relate appropriately to co-workers and supervisors, meet quality standards and production norms, and sustain work and adequate attendance, save for the restriction that Rouse should not be given timed tasks. The evidence supports the ALJ's findings that Rouse had at most mild restrictions on her daily activities and social functioning, and moderate restrictions on her pace, concentration, and persistence.

The court finds that Rouse has not demonstrated any error in the ALJ's credibility assessment, which was rendered consistent with the standards set forth in *Luna v. Bowen*, 834 F.2d

161 (10th Cir. 1987) and Social Security Ruling (SSR) 96-7p. The ALJ's opinion expressly sets forth the standards relating to credibility determinations (Tr. 16), in conjunction with an assessment of both the objective medical evidence and the subjective statements of the claimant. Rouse was released after her treatment with such progress that it was reported she "did not require any therapy at all." (Tr. 137). The ALJ wrote:

> The record indicates that the claimant is status-post resection of a brain aneurysm. Clinically she is doing well and continuing Dilantin as prophylaxis for seizures. She reports no seizures since the brain surgery and it is anticipated that she will be removed from the Dilantin at her next visit with the neurologist. Examinations performed by the neurologist and the primary care physician are unremarkable. Although the claimant has testified to some problems with memory, concentration and fatigue, the medical records do not indicate significant concerns. At the hearing, she testified that she does not concentrate well enough to read. However, at the consultative examination in August 2003, the claimant reported that she watched short television programs and enjoyed reading indicating the ability to concentrate. Her immediate auditory recall was slightly below average, but not deficient. She was able to remember 5 digits forward and 5 digits backwards. She reported no problems in her sleep pattern and in describing her daily activities did not indicate the need for naps.

(Tr. 16-17). Substantial evidence supports the ALJ's credibility determinations, and the court finds that the ALJ's judgment should be affirmed. Based on the objective medical evidence and the credible subjective statements of the claimant, the ALJ made a finding as to her residual functional capacity (Tr. 17), and found that while she could not return to her past relevant work, there were (based upon the testimony of the vocational expert) other jobs in the national economy which could be performed by a person with the residual functional capacity of the claimant, including final assembler, hand mounter, wireworker, light cleaner, messenger, or laundry folder. Claimant has failed to demonstrate any error in the ALJ's opinion, which will accordingly be affirmed.

IT IS ACCORDINGLY ORDERED this 13th day of September, 2005 that the appeal of the plaintiff-claimant Rouse is denied, and the decision of the Commissioner is affirmed.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE